DAKOTA TRUST COMPANY, a Corporation, Plaintiff and Respondent, v. CITY OF HANKINSON, a Municipal Corporation, Defendant and Appellant.

(205 N. W. 990.)

**Municipal corporations — improvement warrants not negotiable instruments.**

1. Warrants issued by a city in payment for a special improvement are not negotiable instruments.

---

Note.—(1) As to negotiability of municipal bonds and warrants, generally, see 19 R. C. L. 989.

(4) On liability of municipality for failure to make special assessment, see 19 R. C. L. pp. 1116, et seq.

**Municipal corporations — transferee of improvement warrants not subject to defenses subsequently arising.**

2. Where a contractor is engaged to construct a public improvement, and where during the progress of the work the city council, in exercise of the powers conferred by § 3710 of the Compiled Laws for 1913, approves estimates of the city engineer and makes partial payment to the contractor in the form of warrants, and where the warrants are transferred, the transferee is not subject to defenses subsequently arising, due to the failure of the contractor to complete the work in accordance with the plans and specifications.

**Municipal corporations — city held to owe holder duty to levy special assessments to pay improvement warrants.**

3. Where a contract for a public improvement obligates the contractor to receive payment in warrants, and where the city council authorizes the issuance of warrants to such contractor, as upon part performance of his contract, exercising powers conferred by § 3710 of the Compiled Laws for 1913, and where such warrants are transferred to one, as against whom the city can not assert a defense arising out of the subsequent failure of the contractor to completely perform the contract, the city owes to the warrant holder the duty to levy special assessments to pay such warrants.

**Municipal corporations — failure to make assessment to meet special assessment warrants subjects city to general liability.**

4. Following Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, the failure of the city authorities to make a proper assessment upon property in a special assessment district to meet obligations under its special assessment warrants, will subject the city to a general liability, although its credit be not pledged to meet the costs and expenses incident to the special improvement.

Opinion filed November 2, 1925.

Mandamus, 38 C. J. § 424 p. 776 n. 60. Municipal Corporations, 28 Cyc. p. 1059 n. 51; p. 1570 n. 98; p. 1571 n. 99.

Appeal from the District Court of Richland County, *Wolfe,* J. Affirmed.

*J. A. Dwyer,* and *Lauder & Lauder,* for appellant.

The holder of a special improvement warrant (that is the warrant involved in this litigation) issued under and in compliance with the provisions of article 20, chapter 44, of the Political Code, being §§ 3697 to 3743b, inclusive, Comp. Laws, 1913, may not recover a general judgment against the city issuing the same upon default in the payment thereof where all the special assessments levied for the im-

provement have not been collected and applied in payment of the warrants and where such default in payment ensued, not by reason of fraud or neglect on the part of the city, but on account of the failure of the owners of the property benefited to pay their special assessments. Bankers Trust & Sav. Bank v. Anamoose, — N. D. —, 200 N. W. 103; Meyer v. San Francisco, 150 Cal. 131, 10 L.R.A.(N.S.) 110, 88 Pac. 722; Hamilton, Special Assessments, §§ 674 et seq.; Page & J. Taxn. by Assessment, § 1503; Dill. Mun. Corp. 482, § 827.

*Lawrence, Murphy & Nilles,* for respondent.

A city became liable to pay paving warrants where it diverted the proceeds of the assessments when collected in payment of other obligations. Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357.

While courts have been vigilant in their scrutiny of corporate action, and have zealously striven to keep corporations and their agents within the limits of granted powers, they have not favored defenses to honest demand, based upon mere irregularities and informalities. Moore v. Mayor, 72 N. Y. 238, 29 Am. Rep. 134.

It matters not that the promise to pay was in a manner not authorized by law. If payments cannot be made in bonds because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. Hitchcock v. Galveston, 96 U. S. 341, 24 L. ed. 659.

A municipality which issues its warrants or bonds and receives the consideration therefor, is liable to make restitution of the money if the proceedings are entirely void or to pay the warrants or bonds as they mature if the proceedings are irregular or there is some defect not going to the question of power or jurisdiction. Bank v. Catawba (Wis.) 197 N. W. 1013; Shepard v. Tulare Irrig. Dist. 94 Fed. 1; Haskell Co. v. Nat. L. Ins. Co. 90 Fed. 228; Chilton v. Grattan, 92 Fed. 873; Independent School Dist. v. Rew, 55 L.R.A. 364, 49 C. C. A. 198, 111 Fed. 1.

A municipality may be estopped by its own records to deny the validity of its obligations. Its resolutions as to the existence or performance of the conditions precedent are conclusive upon the municipality and estop it to show the contrary. 5 McQuillin, Mun. Corp. § 2312; Society for Sav. v. New London, 29 Conn. 174; Lane v.

Schomp, 20 N. J. Eq. 82; Bell v. Waynesboro, 195 Pa. 299, 45 Atl. 930.

Where a city appoints someone qualified to judge the work and its progress and charges him with the duty of inspecting the work and reporting upon it and requires him to notify the contractor if any of the work or materials fail to comply with the plans and specifications, and such person inspects the work and allows it to proceed and fails to notify the contractor during its progress that the work does not comply with the contract, this operates as an acceptance of the work and is conclusive. Donnelly, Public Contr. § 256; Danville Bridge Co. v. Pomeroy, 15 Pa. 151; Pauly Jail Bldg. & Mfg. Co. v. Hamphill County, 62 Fed. 698.

## Statement of facts.

BIRDZELL, J. An action and a special proceeding were tried together in the district court of Richland county. In the action the plaintiff sought a judgment against the defendant on two special improvement warrants for $500 each, issued by the defendant and payable out of the funds of sewer improvement districts Nos. 1 and 2, respectively. The special proceeding was an application, on relation of Kistler, for a writ of mandamus directed to the defendant corporation and to the members of the city council, city officers and special assessment commission to compel the levy of special assessments to defray the cost of the improvement, on account of which two warrants, each for the sum of $500, payable from the funds of sewer improvement districts Nos. 1 and 2, respectively, had been issued, which were owned by the relator. The proceeding was later amended to include additional warrants, also owned by Kistler. Upon the application an alternative writ or order was issued requiring the levying of special assessments for the total cost of the improvement, on account of which the warrants owned by the relator had been issued. Both the action and the special proceeding came on for trial before the district judge without a jury at the same time, and it was stipulated by counsel that the evidence taken in the one case should be considered as taken in the other so far as material, and upon these appeals there is but one statement of the case.

In the Dakota Trust Company Case, in which judgment is sought on the warrants, judgment was rendered for the plaintiff. A motion for a new trial was made and overruled. The appeal is from the judgment and from the order overruling the motion for a new trial. In the Kistler case a judgment was entered awarding the writ as prayed for, and the appeal is from the judgment.

The facts out of which the controversy arises may be stated as follows: In 1920 the city council of the city of Hankinson undertook to establish a sewer system and a waterworks system, taking all the necessary steps therefor, as will appear from the case of Jones v. Hankinson, 48 N. D. 618, 186 N. W. 276, in which case it was held that the plaintiffs had not sustained the burden of proving irregularities in the proceedings which were alleged as a basis for injunction.

On August 12, 1920, bids were received and opened for the construction of a sewer system, and a resolution was passed for the letting of the contract to the John O'Connor Company of Fargo for $82,716.29. Under date of August 13, 1920, a contract was entered into between the city and the O'Connor Company in accordance with the resolution. The contract provided, among other things, for the doing of the work in accordance with a proposed schedule and specifications; that the city of Hankinson assumed and incurred no general liability; that the payments thereunder were to be made by warrants bearing 7 per cent interest; that the work should be subject to the approval of the engineer of the city who should superintend and inspect the work during its progress; and it provided for the completion by July 1, 1921. This date was later extended. Work was begun under this contract in 1921, and it seems that when trenches were dug in which to lay the tile or sewer pipe, there was uncovered throughout a large portion of the trenches a bed or beds of quicksand. It also appears that water seeped into the trenches, thus making the work of laying the pipe difficult; that on account of this condition the joints in the pipe, which were required by the specifications to be laid in Portland cement mortar and to be water tight, were cemented only over the top and not underneath, as the water prevented the cementing operations beneath; that the quicksand did not furnish a good foundation upon which to lay the pipe; that the steps required to be taken to improve the foundation were not taken, and that as a consequence the pipe, when laid,.

were more or less uneven; that the joints were not sufficiently tight to prevent the infiltration of quicksand and that, due to these conditions, principally the settling of the pipe in the quicksand beds and the infiltration of quicksand, the sewer system when completed worked imperfectly and throughout a large part of the area did not work at all; that it became entirely plugged up in sections and at one place, if not several, it settled so that it did not make a proper connection with the manhole; that attempts to clear the system here and there failed; that at one time—though it seems this condition was later remedied— the outlet was not properly connected with the septic tank; that a sludge bed had not been properly constructed, due to the failure to supply gravel thereon at the proper thickness; that during the progress of the work the engineers, whose duty it was to make inspections, made only cursory examinations; that there was little, if any, effort made to counteract the adverse physical conditions in order that the sewer when completed might be in more perfect condition; that even though it had been constructed according to plans and specifications, the grade of the sewer was such that it would require attention occasionally, such as flushing, in order to prevent the accumulation of solid matter at various places; that the sewer did not receive this attention on the part of the city, though several permits were given to make connections therewith. The city engineer employed was a corporation known as Dakota Engineering & Construction Company.

From time to time, during the progress of the work, estimates were submitted to the city council and allowed. Among these was the following:

Hankinson, N. D., Feb. 6th, 1922.

Honorable Mayor and City Council,

Hankinson, N. Dak.

Gentlemen:

We submit herewith a partial estimate of the amount due the John O'Connor Co. to date of Feby. 4th, 1922, on their contract covering the construction of a sewer system for the city of Hankinson.

| | |
|---|---:|
| 5141 ft. 15″ Tile in place at 3.80 per ft. ............ | $19,535.80 |
| 1543 ft. 12″ Tile in place at 2.30 per ft. ............ | 3,548.90 |
| 5674 ft. 10″ Tile in place at 2.26 per ft. ............ | 12,823.24 |
| 14288 ft.  8″ Tile in place at 2.00 per ft. ............ | 28,576.00 |
| 55 manholes at 130.00 each ...................... | 7,150.00 |
| 7 Lampholes (partial est.) at 10.00 ................ | 70.00 |
| Septic tank, 50% complete at $10,000.00 ............ | 5,000.00 |
| | $76,703.94 |
| Less approx. 15% .............................. | 11,703.94 |
| | $65,000.00 |
| Less previous estimate .......................... | 61,000.00 |
| Approved for payment ...................... | $4,000.00 |

Respectfully submitted,

Dakota Engineering & Const. Co.

Dakota Engineering and Construction Co. To Engineering services as per contract, 1% of estimate to the John O'Connor Co. dated Feby. 6th, 1922, 1% of $4,000.00 ........ $40.00

The action of the council thereon was:

The following resolution was offered by Alderman Brown, seconded by Alderman Schuett.

Be it Resolved, that the foregoing estimate of the City Engineer approving for payment the sum of $4,000.00 to the John O'Connor Co. be allowed and approved, and that warrants be issued, executed and delivered against the proper fund in the manner provided by law.

Roll call—1st Ward, Brown, yes, Burfening, yes.
2nd Ward, Schuett, yes, Schramm, yes.
3rd Ward, Hoffman, absent, Peitz, absent.

On March 6, 1922 a final estimate was submitted and allowed, and payment ordered as follows:

February 28, 1922.

Hon. Mayor and City Council,
Hankinson, North Dakota.
Gentlemen:

We submit herewith a final estimate of the amount due the John O'Connor Company under their contract for the construction of a sewer system for the City of Hankinson.

| | |
|---|---:|
| 5,303 ft. 15″ Vitrified tile at 3.80 per ft. | $20,151.40 |
| 1,543 ft. 12″ Vitrified tile at 2.30 per ft. | 3,546.90 |
| 5,674 ft. 10″ Vitrified tile at 2.26 per ft. | 12,823.34 |
| 14,288 ft. 8″ Vitrified tile at 2.00 per ft. | 28,576.00 |
| 56 manholes at $130.00 each | 7,150.00 |
| 7 lampholes at $20.00 each | 140.00 |
| 1 Septic tank | 10,000.00 |
| 1 Sludge bed | 500.00 |
| Total | $82,889.54 |
| Paid to date | 65,000.00 |
| Balance due on construction | $17,889.54 |
| Engineering costs | 4,144.48 |
| Condemnation costs | 1,575.00 |
| Printing and assessing costs | 1,000.00 |
| Incidental expenses chargeable to improvement | 1,390.00 |
| Balance due Contractor | $26,000.00 |

Respectfully submitted,
Dakota Engineering & Construction Co.

To Dakota Engineering and Construction Company,
   Valley City, N. D.
To Engineering services as per contract, 5% of total con-
  tract of the John O'Connor Co. of $82,889.54 ........ $4,144.48
Less payments to date ............................. 2,304.32

           Balance due ..................,............. $1,840.16
Motion made by Schuett, seconded by Burfening, that bills of Dakota
   Engineering Co. be allowed as read.
Roll Call.—1st Ward, Brown, yes, Burfening, yes.
          2nd Ward, Schuett, yes, Schramm, yes.
          3rd Ward, Hoffman, absent, Peitz, absent.
Motion made by Burfening, seconded by Schramm.

Be It Resolved, that the foregoing estimate of the City Engineer
approving for payment the sum of $26,000.00 to the John O'Connor
Co. be allowed and approved and that warrants be issued, executed
and delivered against the proper fund in the manner provided by
law.
Roll Call—1st Ward, Brown, yes, Burfening, yes.
          2nd Ward, Schuett, yes, Schramm, yes.
          3rd Ward, Hoffman, absent, Peitz, absent.

The following resolution was passed at the same meeting:

Be It Resolved, By the city of Hankinson, North Dakota, through
its mayor and city council, in regular meeting.

That, Whereas, the city engineer has submitted a final estimate
for the completion of the contract of the John O'Connor Company for
the furnishing of labor and materials for the construction of a sewer
system in accordance with the contract and plans and specifications
now on file in the office of the city auditor, and it appears to the City
Council that said work has been fully and finally completed to the
satisfaction of said city engineer and to the council, except that part of
the work involving the completion of the septic tank and accessories
at the outlet of said sewer system, and that the main and lateral
sewers have been completed in accordance with the contract and have

been tested and found satisfactory by the city engineer and that under the terms of the contract with said sewer contractor, the final estimate shall not be awarded until the full completion and testing of the entire work, but it now appearing that a considerable number of property owners desire to make connections with said main and lateral sewers and to have the use thereof before the opening up of Spring, and that it is advantageous to the city of Hankinson, its citizens and property owners that such main and lateral sewers shall be put into immediate use in connection with the waterworks system and that it is for the best interests of the said City that said sewers should be made available at the earliest possible moment, and that it is necessary in order to have the use of such system, that a part of the system with the exception of the septic tank and accessories be finally accepted and approved at the time it is so taken over by the City of Hankinson.

Now Therefore, Be It Resolved, That the contract of the John O'Connor Company is determined to be fully completed as to the furnishing of labor and material and as to the establishment of said sewer system, including the main and lateral sewers, and all the part of the system, with the exception of the septic tank and accessories located at the outlet of said sewer, and the city now accepts said work and takes over the same from the said sewer contractor and the final estimate heretofore filed by the city engineer in favor of the said John O'Connor Company, in the sum of $26,000 be and the same is accepted and approved and the Mayor and city auditor are hereby directed to issue the necessary warrants against the proper sewer and improvement district fund in payment of said final estimate.

Be It Further Resolved, That the surety bond executed by the John O'Connor Company and the Dakota Trust Company, a surety, now on file in the office of the city auditor, be and the same is hereby approved and that the conditions thereof are hereby accepted by said city of Hankinson and the city engineer is directed to take over from the said sewer contractor, the possession of said sewer system and the use thereof with the exception of the septic tank and accessories at the outlet of said sewer; and that said City Engineer is directed to cause the prompt completion of that part of the work yet unfinished and a proper test thereof made upon its final completion and in the event that the same is not fully completed, in accordance with the

plans and specifications now on file by the contractor, the said John O'Connor Company, said city engineer is to immediately notify the said John O'Connor Company, and Dakota Trust Company, as surety, of said deficiency and that in consideration of such bond, the final estimate is hereby awarded the said John O'Connor Company, as aforesaid, which resolution having been submitted to vote of the Council, the ayes and nays were as follows:

Roll Call—1st   Ward, Brown, yes, Burfening, yes.

2nd Ward, Schuett, yes, Schramm, yes.

3rd Ward, Hoffman, absent, Pietz, absent.

and said resolution was thereupon by the Mayor declared to be duly adopted.

The contract and bond referred to in the above resolution were entered into and work was later done on the septic tank and sludge bed pursuant thereto. It does not appear, however, that this work was ever completed to the entire satisfaction of the city, in that the gravel upon the sludge bed was not of the required thickness. It would require an expenditure of approximately $200 to make it conform to the specifications.

During the latter stages of the progress of the work under the general contract, the city, through its officers, particularly the mayor, was negotiating with the Lincoln Trust & Savings Bank of Minneapolis, Minnesota, for the sale of the warrants of sewer districts Nos. 1 and 2, and it seems that an agreement was reached for their disposition at par, plus accrued interest, in the early part of February, 1922. This agreement was expressed in a resolution of the city council on February 6, 1922, which purported to authorize the issuance and sale to the Lincoln Trust & Savings Bank of $30,500 of warrants. On March 6th, following, another resolution was passed purporting to authorize and ratify this sale. This resolution recites that there had been theretofore issued to the John O'Connor Company, in part payment, warrants against the funds of district No. 1 aggregating $22,500, and that it was contemplated that special assessments would be levied in that district for at least $32,000; that there had been previously issued to the John O'Connor Company $38,500 of warrants drawn against the funds of sewer district No. 2, and that it was

contemplated that there would be levied to pay for the improvement in that district, $60,000; that in addition there was authorized the issuance of $9,500 of warrants in sewer district No. 1, and $21,500 in sewer district No. 2, and that the sale of the latter warrants, $9,500 and $21,500, to the Lincoln Trust & Savings Bank, at par and accrued interest, was for the best interests of the city, was the best offer obtainable and was ratified, approved and confirmed. Another resolution purported to authorize the issuance of $3,500 in warrants to meet instalments of interest about to mature upon warrants previously issued.

The warrants described in the resolutions above referred to were delivered to the Lincoln Trust & Savings Bank and the proceeds entered as a credit to the city of Hankinson. On February 14th a credit was entered of $30,589.17, and on March 11th a further credit of $3,575.83 was entered. A short form city warrant had been issued to John O'Connor for $4,000, payable out of any money in the sewer fund, for the estimate allowed on February 6th. On the trial this warrant was produced by the city auditor who had obtained it from the Northwestern National Bank, successor to the Lincoln Trust & Savings Bank, as a voucher. It was charged in that bank against the account of the city of Hankinson on February 27th. On March 8th, two days after the allowance of the final estimate to the John O'Connor Company as above, that company drew a draft upon the Lincoln Trust & Savings Bank of Minneapolis, payable to the order of the First National Bank of Hankinson. This draft was paid and the proceeds credited to John O'Connor Company's account in the Hankinson bank and was charged to the account of the city of Hankinson in the Minneapolis bank, thus leaving as the proceeds of the warrants which had previously been delivered to the Minneapolis bank a credit of some $589. The evidence is contradictory as to whether the warrants, the proceeds of which were credited in the Minneapolis bank to the city of Hankinson, were delivered to it by one Fortune of the O'Connor Company or by the mayor of the city of Hankinson. Subsequent to the above transactions, there was deposited in the First National Bank of Hankinson by the John O'Connor Company, through its agent, $6,320.04 to the credit of an account designated in the bank as the city of Hankinson sewer account, and there were paid out of this ac-

count on the warrants previously issued by the city authorities to the city engineer $4,160.79, or the total of these warrants, plus accrued interest, less a discount of 4 per cent. There were also other payments charged against this same account.

The correspondence between the city officers and the Minneapolis bank shows that the proceeds of the warrants in the Minneapolis bank were to be used only in payment of estimates due John O'Connor Company and that before the money was drawn out it was required that an estimate should accompany the draft.

It appears that the warrants purchased by the Dakota Trust Company were purchased on or about March 10, 1922, and that the Dakota Trust Company is surety on the bond given by John O'Connor Company conditioned for the completion of the work pursuant to the resolution of March 6th, the date of the allowance of the final estimate.

It does not appear that the portion of the work covered by the separate contract of March 6th was ever completed to the satisfaction of the city or that it was ever approved by the engineer.

Some proceedings had been instituted looking toward the assessment of the property in the assessment districts in question to pay for the improvement, but these were subsequently discontinued. The Dakota Trust Company sued as owner of improvement warrants that had been issued to the John O'Connor Company upon the approval of partial estimates, and the relator in the mandamus proceeding was the owner of some similar warrants, but it appears that the larger portion of his investment was in warrants which he had purchased from the Lincoln Trust & Savings Bank and which that bank had acquired in the manner herein previously stated. Since different legal principles control the rights of the parties in their respective situations and under the different character of the proceedings brought, each appeal will be considered in a separate opinion.

BIRDZELL, J. (after stating the facts, as above). It is contended on this appeal (Dakota Trust Company case): (1) That the trial court erred in entering the judgment against the defendant city as a general liability of the city; (2) that the warrants are not negotiable instruments and that the plaintiffs can have no rights thereon different from the rights of the John O'Connor Company; that it mani-

festly appears that the city has defenses to the warrants in the hands of the John O'Connor Company by reason of the manner in which the work was done; that the work had not in fact been done to the satisfaction of the city engineer and it had not in fact certified to its completion. These contentions will be considered in their inverse order.

When a contract is entered into for the doing of a public work in the nature of a special improvement to be paid for by assessments levied against property benefited, the carrying out of the contract on the one side and its supervision on the other, become administrative matters. Weston v. Syracuse, 158 N. Y. 274, 43 L.R.A. 678, 70 Am. St. Rep. 472, 53 N. E. 12, and when, during the course of performance, partial estimates are allowed from time to time upon the report of the engineer and warrants are issued, the city has effectually made a representation that the contractor, through partial performance, is entitled to that portion of the consideration incorporated in the estimate and the approval. It retains the withheld portion of the consideration and the contractor's bond as security for the uncompleted part of the contract. While, as the appellant contends, the warrants are not negotiable in the sense that a purchaser and transferee takes them free of defenses available to prior parties as between themselves, it does not follow that they may not be transferred in circumstances that will preclude the obligor from asserting as against the transferee, that by reason of facts occurring subsequently it had acquired a defense which it could urge if the warrants were still in the hands of the contractor. Long Beach School Dist. v. Lutge, 129 Cal. 409, 62 Pac. 36; Newport Wharf & Lumber Co. v. Drew, 125 Cal. 585, 58 Pac. 187. So here, the city, having by resolution of its city council declared the contract to have been so far performed that the contractor was entitled to a stated portion of compensation, and it having given to it written evidence of its right to be satisfied pro tanto out of funds which it was the city's duty to raise, is precluded, as against any person relying upon the representation, to assert the contrary. Section 3710 of the Compiled Laws for 1913 expressly provides for partial payments to the contractor in the discretion of the city council, as the work progresses, up to 85 per cent of the amount earned. We can see no distinction in this respect between the issuance of a warrant

53 N. Dak.--24.

to a contractor and its subsequent transfer by him to third parties, before any defense has arisen thereto, in reliance upon the acts preceding their issuance and a direct sale of the warrants by the city authorities to third parties. Section 3711 of the Compiled Laws for 1913 provides that warrants may be used in making payments on contracts "or may be sold for cash" and the proceeds credited to the fund and used for paying for such improvements. In case of the sale of the warrants for cash and the disbursement of the proceeds, or a portion thereof, to the contractor from time to time, it would hardly be contended, we believe, that the city could defend an action upon the warrants by establishing the failure of the contractor to complete the contract in accordance with plans and specifications. Yet, if the warrants be considered as issued, as the appellant contends, *for the sewer system,* there would be as much room to assert failure of consideration in the one case as in the other. The statute, by providing for the issuance of the warrants and for their sale, seems clearly to contemplate that a warrant once legally and regularly issued shall be the binding obligation of the city to the extent indicated therein, and it further contemplates that the interests of those affected by the improvement shall be safeguarded through a bond and the retention of sufficient funds or warrants to secure compliance with the contract. Manifestly, no warrant would be salable if liable to be defeated on account of the subsequent failure of the contractor. Yet the statute expressly authorizes a sale. We are of the opinion that the purchaser of warrants, who in good faith relies upon a record made by the city council showing that they were regularly issued under the contract, holds them free from defenses arising out of subsequent breaches of the contract. Long Beach School Dist. v. Lutge, and Newport Wharf & Lumber Co. v. Drew, supra. We do not, of course, hold that the warrants are in any sense negotiable. They are assignable choses in action and are subject, in the hands of the assignee, only to such defenses on the part of the city as existed at the time or before notice of the assignment. Comp. Laws 1913, § 7396.

The evidence does not establish bad faith on the part of the Dakota Trust Company, in acquiring the warrants in question, but it shows that it acted in reliance upon the record of the city council as to their issuance. For these reasons we are of the opinion that the

Dakota Trust Company, being the holder of warrants issued upon partial estimates, under § 3710 of the Compiled Laws for 1913, holds free from defenses that might have been urged against the John O'Connor Company on account of subsequent breaches of contract.

We regard the merits of this case as substantially disposed of in the foregoing portion of this opinion. However, the contention of the appellant that the judgment is erroneous because it adjudges recovery against the city, rather than against the special assessment district and limited to assessments to be made, has received our consideration. In the case of Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357, at page 375, it was said:

"The contractors, by accepting warrants payable out of these special funds, had a right to rely upon the city's performing with all expedition the acts necessary to create the fund out of which the warrants would be retired. The contract duty of the city, under the construction we have assumed, was not only to make proper assessments, but to put in operation the proper machinery to collect these assessments, and to see that the money was actually collected within a reasonable time after the issuance of the warrants; that such moneys, when collected, should be held in the special funds, and paid out only upon the warrants issued against these funds; and that the moneys would not be diverted to any other purpose. (Citing authorities.) If this duty had been fully performed by the city, this action never would have been commenced or made necessary."

As between the city and the holder of the warrants in question, there can be no doubt but that the city has been remiss in its obligations, either express or implied from its contract, to take the necessary steps to enable the holders of the warrants in question to realize upon them, and we are of the opinion that this breach on the part of the city is sufficient to bring it within the rule announced and applied in Pine Tree Lumber Co. v. Fargo, supra. It follows that the judgment in this case must be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and NUESSLE, JJ., concur.